**U.S. Department of Justice**



*Washington, D.C 20530*

August 29, 1988


MEMORANDUM FOR JAMES H. THESSIN
ASSISTANT LEGAL ADVISER FOR MANAGEMENT
UNITED STATES DEPARTMENT OF STATE

Re:  Application of the Emoluments Clause to a
     <u>Civilian Aide to the Secretary of the Army</u>


    This is in response to your request of August 10, 1988, for our opinion on the applicability of the Emoluments Clause to William J. Hybl, a Civilian Aide to the Secretary of the Army. The Emoluments Clause prohibits those who hold offices of "profit or trust" under the United States from accepting gifts, titles or other presents from foreign States, without the consent of Congress. As set forth in your letter, the Government of Luxembourg has offered Mr. Hybl the position of Honorary Consul.

    For the reasons discussed below, we conclude that Mr. Hybl does hold an office of trust for purposes of the Emoluments Clause, and accordingly he is subject to the Clause's prohibitions. We conclude further that because the position of Honorary Consul for Luxembourg is clearly an "Office or Title" offered by a foreign State, and because Congress has not given its consent, Mr. Hybl may not accept the Consulship while continuing to serve as a Civilian Aide.[1]

---

    [1] The General Counsel, Department of the Army, has opined that, because Civilian Aides are not employees of the Federal Government, and do not receive compensation for their services, "constitutional . . . restrictions on the acceptance by officers or employees of the United States of titles or offices from a foreign government" should not apply to Mr. Hybl. Letter from Susan J. Crawford, General Counsel, Department of the Army, to Representative Joel Hefley, November 18, 1987, at 1. As our analysis makes clear, however, neither the uncompensated nature of an individual's services, nor his technical status as an employee, determines whether an individual is subject to the Emoluments Clause.

(continued...)

## Analysis

The Emoluments Clause, Article I, Section 9, clause 8 of the Constitution, provides:

> [N]o Person holding any Office of Profit or Trust under them [the United States], shall, without the consent of the Congress, accept of any present, Emolument, Office, or Title, of any kind whatever, from any King, Prince, or foreign State.

This clause, adopted unanimously at the Constitutional Convention of 1787, was intended by the Framers to preserve the independence of officers of the United States from corruption and foreign influence.[2]

The Emoluments Clause must be read broadly in order to fulfill that purpose. Accordingly, the Clause applies -- as its words suggest -- to all persons who hold offices of "profit or trust" under the United States, and not merely to that smaller group of persons who are deemed to be "officers of the United States" for purposes of Article II, Section 2 of the Constitution. E.g., Letter from Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel, to James A. Fitzgerald, Assistant General Counsel, United States Nuclear Regulatory Commission, June 3, 1986 (hereafter Fitzgerald letter), at 4; 6 Op. O.L.C. 156, 157-58 (1982).

Application of the Emoluments Clause to the facts of the current case is a fairly straightforward matter. We have examined Army Regulation 1-15, governing Civilian Aides to the Secretary of the Army. Aides are chosen by the Secretary according to specified criteria, and are subject to security

---

[1](...continued)

The General Counsel has further opined, evidently upon information supplied by Mr. Hybl, that the position of Honorary Consul should not create a "conflict of interest," or "otherwise interfere with Mr. Hybl's responsibilities as a Civilian Aide." Id. In light of our conclusion that Mr. Hybl is prohibited from accepting the Honorary Consulship by the Emoluments Clause, we need not address any question of conflict of interest, except to note that the prohibition contained in the Emoluments Clause is cast in absolute terms (in the absence of congressional consent) and that the application of the Clause therefore does not turn upon the existence of any actual conflict of interest.

[2] 3 Farrand, The Records of the Federal Convention of 1787 327 (1966 ed.).

clearances, standards of conduct and disqualifying conditions. (Paragraphs 4-8, 10.) Aides serve a "term of office" of two years, enjoy the "responsibilities and privileges" of the position until formal "separation action" is taken by the Secretary, and are variously described as having "responsibilities" or "duties." (Paragraphs 4, 5, and 13.) Aides are required to provide "individual advice" to the Secretary, the Chief of Staff, and others, and the Secretary and the Chief of Staff "communicate directly with civilian aides." (Paragraphs 4 and 12.) Aides "work closely with [major Army command] and installation commanders, State adjutants general and other Army National Guard commanders, Army Reserve Commanders," and many others. Aides also "[d]isseminate information about the Army's objectives, roles, requirements, and major programs to the public," and "[p]rovide advice concerning the development of programs and methods to attain maximum understanding and cooperation between the civilian community and the Army." (Paragraph 4.) Aides have access to classified information, and receive a "security orientation concerning . . . responsibilities in receiving, handling, and protecting classified information . . . ." (Paragraphs 9 and 11.) All of these factors together demonstrate that Civilian Aides are carefully chosen and highly valued for their abilities and service. We think these aspects of the Civilian Aide position indicate that the United States reposes great trust in the Aides, and relies upon them to perform various duties that further the national defense.

These same attributes -- the reposing of trust, the necessity of undivided loyalty to the United States, the importance of the task performed by those who hold the office, personalized selection and access to classified information -- characterize the "office of trust" for purposes of the Emoluments Clause.[3] E.g., Fitzgerald letter, at p. 5 (among other things, fact that employee must conform to regulations regarding conduct, and has access to classified information, indicate that individual holds an office of profit or trust); 15 Op. A.G. 187, 188 (1877) (Commissioners appointed by the President to serve on the Centennial Commission hold offices of trust within the meaning of the Emoluments Clause, even though their duties are of a special and temporary character, because they have been entrusted with those duties "on account of their personal qualifications and fitness for the place"). We have no difficulty concluding, therefore, that the position of Civilian Aide to the Secretary of

---

[3] We do not mean to suggest, of course, that all of these factual attributes must be found in order for a position to qualify as an office of profit or trust for purposes of the Emoluments Clause.

the Army is an "Office of . . . Trust" under the United States for purposes of the Emoluments Clause.[4]

It is equally clear that the Honorary Consulship at issue here is clearly an "office or title," which those who hold an office of profit or trust from the United States may not receive from a foreign government, absent the consent of Congress. See also 13 Op. A.G. 537, 538 (1871) (an American minister to one foreign power could not accept a diplomatic commission to the same power from another foreign State because such a commission would create "an official relation between the individual thus commissioned and the government which in this way accredits him as its representative.").[5]

Nor can Congress be deemed to have consented to Mr. Hybl's acceptance of the title or office of Honorary Consul. No such specific consent has been obtained[6]; and the generalized congressional consent to the acceptance of gifts and decorations from foreign governments contained in 5 U.S.C. 7342 does not, by its express terms, apply to offices or titles.

## CONCLUSION

Accordingly, even though Mr. Hybl is not formally an "employee" of the United States, and receives no salary in his position as a Civilian Aide, the language of the Emoluments Clause, the purposes behind the Clause, and prior opinions of the

---

[4] Moreover, as the text of the Emoluments Clause itself suggests, one can hold an office of trust for purposes of the Emoluments Cause even if the office entails no compensation. 15 Op. A.G. 187, 188 (1877) (members of Centennial Commission who receive no compensation may nonetheless hold "offices of trust" under the Emoluments Clause).

[5] We note that you have stated that the State Department also considers the position of Honorary Consul to be an "Office or Title" from a foreign State for purposes of the Emoluments Clause. We note further that Richard Gookin, the State Department's Associate Chief of Protocol, has confirmed "the importance to the Government of Luxembourg of its honorary consular officers throughout the United States . . . ." Letter from Richard Gookin to Ambassador Philippe of Luxembourg, February 9, 1988, at 1.

[6] Letter from Richard Gookin to Ambassador Philippe of Luxembourg, February 9, 1988, at 1.

- 4 -

Attorney General and of this Office compel the conclusion that Mr. Hybl may not accept the position of Honorary Consul of Luxembourg while continuing to serve as a Civilian Aide.

John O. McGinnis
Deputy Assistant Attorney General
Office of Legal Counsel